## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOSEPH HOBAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | No.: 16-cv-1024-HAB |
| ) | |
| **DR. ANDREW TILDEN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

### ORDER

Plaintiff, proceeding *pro se*, and now confined at the Lawrence Correctional Center, filed a § 1983 action alleging Eighth Amendment deliberate indifference at the Pontiac Correctional Center ("Pontiac"). Defendants Dr. Andrew Tilden, Director of Nursing Diane Pouk, Nurse Karen Zehr, and Wexford Health Sources Inc., ("Wexford Defendants") have filed a motion for summary judgment [ECF 206] to which Plaintiff has responded. Defendants employed by the Illinois Department of Corrections ("IDOC"), Teresa Arroyo and John Birkel ("IDOC Defendants") have also filed a motion for summary judgment [ECF 246]. Plaintiff has filed a response [ECF 279], and Defendants' have replied to the responses. For the reasons identified herein, the Court hereby GRANTS in part and DENIES in part the Wexford Defendants' motion for summary judgment, [ECF 206]. The Court hereby GRANTS, in its entirety, the IDOC Defendants' motion for summary judgment, [ECF 246].

### PROCEDURAL HISTORY

Plaintiff asserts that he was injured in a near-fatal automobile accident in New Orleans, Louisiana in 1997. After the accident, he began to develop severe symptoms in the right lower pelvis, right testicle and right leg. Plaintiff underwent testing which revealed an abnormality, not particularly identified, in the right pelvic area near the inguinal canal. In 1998, Plaintiff

1

underwent exploratory surgery at the Sisters of Charity Memorial Hospital in New Orleans. At that time, a hernia was identified and abdominal mesh was inserted to correct the defect. Plaintiff alleges that he had a difficult recovery and that, initially, his leg was numb and he could not walk. Plaintiff underwent a long course of physical therapy and, by 2009, had regained normal function.

Plaintiff apparently remained pain-free until confined to the Cook County Jail in 2009. At that time, Plaintiff began experiencing intermittent right inguinal pain. Plaintiff identifies two distinct types of pain which arise from the same area. One is a pinching pain which begins in the right testicle and extends to the lower back. The other is a burning internal pain, "like bee stings." This extends from the right testicle to the right inguinal hernia surgery site. Plaintiff describes this as "horrible pain" which is accompanied by swelling of the testicle and is relieved only by applying ice. [ECF 206-1 pp. 32, 55]

Plaintiff testified that when he was held at the Cook County Jail, a physician there suspected that the pain was caused by a failure of the implanted abdominal mesh. The physician referred Plaintiff to an outside hospital for diagnostic testing but, before this could be done, Plaintiff was transferred to the custody of IDOC.

On December 31, 2015, Plaintiff filed a complaint and later an amended complaint, asserting that he experienced severe abdominal/pelvic, possibly caused by mesh failure. He asserted that Defendants did not do appropriate testing to determine the cause of the pain, and allowed his medications and ice permits to expire before reordering them. He also asserted that he has calcifications in his prostate, prostatitis and "BPH", benign prostatic hypertrophy, incorrectly identified as benign prostatic hyperplasia, which are not being treated. [ECF 279-3 page 28]. Plaintiff asserts that these conditions are symptomatic as he has "unusual feelings in

2

that area." He also makes an unsupported claim that the asymmetrical enlarged prostate is indicative of prostate cancer. He also asserts that when his inguinal injury "acts up," the prostate acts up as well.

On August 15, 2017, Plaintiff filed a motion for injunctive relief [ECF 167], asserting that his abdominal/pelvic pain was caused by implanted mesh which might have been subject to a product recall. On August 17, 2017, the District Court denied the request for injunctive relief and Plaintiff appealed. The Seventh Circuit Court of Appeals remanded the matter, noting that in 2014, a prison doctor had emailed Defendant Tilden, recommending that he follow up to determine whether the inserted mesh had been recalled and needed to be removed. [ECF 272 p.4]. The Appellate Court directed the trial Court to undertake an evidentiary hearing so as to determine the status of the mesh implant.

The District Court recruited *pro bono* counsel for Plaintiff and a status hearing was convened. At the hearing, counsel advised the court that Plaintiff's records from Charity Hospital in New Orleans had been lost in a hurricane and he had been unable to discover the serial numbers of the mesh to determine whether it had been recalled. Plaintiff's counsel indicated that he would contact the manufacturer and would inform the court if the mesh could be identified. Counsel has not reported back and the court assumes that these inquiries were not successful.

**MATERIAL FACTS**

On December 31, 2015, Plaintiff filed his initial complaint and on June 24, 2016, his amended complaint, asserting that the Wexford Defendants Tilden, Pouk, and Zehr, and IDOC Defendants Arroyo and Birkel were deliberately indifferent to his prostate condition and abdominal/pelvic pain possibly related to mesh failure. He had also alleged that Defendants

3

Zehr and Birkel had improperly changed his pain medication orders. In addition, Plaintiff alleged a *Monell* claim against Wexford, asserting that as a cost savings measure, it had a policy of allowing prescriptions and permits to lapse before being reordered. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-92 (1978).

Plaintiff was transferred to Pontiac on September 29, 2010 and, on August 3, 2011, presented to Defendant Tilden complaining of right lower extremity weakness and tingling, which he believed was related to the hernia surgery. Defendant noted that Plaintiff had been seen by a physician's assistant on May 25, 2011 and had been prescribed Motrin. Defendant Tilden advised Plaintiff to continue taking the Motrin and follow-up in one month.

On September 22, 2011, Dr. Tilden examined Plaintiff for reports of right inguinal pain with occasional swelling of the testicle. Defendant performed a physical examination and observed there was no hernia, no tenderness, and that Plaintiff's genitourinary exam was within normal limits. Dr. Tilden a documented a stable right inguinal hernia repair. He prescribed Motrin 600 milligrams twice daily for two months and advised Plaintiff to return to sick call as needed. The medical records do not document a subsequent complaint of right inguinal hernia pain until May 30, 2014.

On June 20, 2014, Plaintiff was referred to Defendant Tilden for complaints of right inguinal pain. Defendant Tilden noted that Plaintiff had a normal physical exam. He prescribed Naprosyn 500 mg twice daily for three months, as well as several other medications for an unrelated rash. On July 5, 2014, Plaintiff was seen by another Pontiac physician who continued the Naprosyn and prescribed Bentyl for an unrelated bowel issue.

On July 27, 2014, Dr. Tilden saw Plaintiff for complaints of occasional right inguinal pain and swelling. Dr. Tilden ordered a chest X-ray, complete blood count (CBC) and

comprehensive metabolic panel (CMP), and wrote a permit for ice every evening for two weeks. He saw Plaintiff again on September 2, 2014. At that time, Plaintiff's physical examination was normal and he reported that the ice was effective in relieving pain and, "was like morphine to me." Dr. Tilden considered whether Plaintiff had somatized the pain and referred him to psychiatry.[1] Defendants do not disclose the result of the psychiatry consult. Dr. Tilden also ordered a repeat CBC and CMP, as well as a urinalysis and a lumbar spine x-ray. He also prescribed a three-month course of Naprosyn.

On February 13, 2015, Defendant Tilden saw Plaintiff for continued complaints of right inguinal pain, right testicular pain, right knee pain and low back pain. Defendant undertook a physical exam which was within normal limits, with no right inguinal tenderness, no masses and no hernias. Nonetheless, he admitted Plaintiff to the infirmary for observation and treatment. Defendant Tilden also ordered additional blood work and urinalysis, as well as an x-ray of the right knee and lumbar spine.

Defendant Tilden saw Plaintiff in the infirmary on February 15, 2015. At that time, Plaintiff reported that his low back pain and right knee pain were not controlled with Naprosyn. Dr. Tilden added Ultram every morning for a month.[2] He also renewed Plaintiff's permit for ice to the right inguinal area, twice daily, for one month.

On February 18, 2015, Defendant Tilden examined Plaintiff who was still in the infirmary. Physical exam findings were documented as being within normal limits with no tenderness in the right inguinal area. Plaintiff also denied low back or right knee pain and was observed to have good range of motion of the lumbar spine and all extremities. Defendant

---

[1] Somatization is a tendency to experience and communicate psychological distress in the form of somatic symptoms and to seek medical help for them. https://en.wikipedia.org/wiki/Somatization.

[2] Ultram is a narcotic-like pain reliever used to treat moderate to severe pain. https://www.drugs.com/ultram.html.

Tilden also conducted a rectal exam in response to Plaintiff's request that his prostate be assessed. The exam was positive for a minimally enlarged prostate, appropriate for a man of Plaintiff's age.

Defendant discharged Plaintiff from the infirmary on February 20, 2015. At that time, he assessed Plaintiff as experiencing low back pain secondary to degenerative disc disease with resolving right inguinal symptoms. He issued a permit for ice twice daily for three months and renewed the Naprosyn and Ultram.

On May 22, 2015, Defendant Tilden saw Plaintiff to renew his permits. At that time, Plaintiff reported right lower quadrant pain near the surgical scar. He also complained of a hardened spot above the scar. Dr. Tilden conducted an exam and noted palpable scar tissue which was nontender with no abnormal masses. Plaintiff renewed the prescriptions and the permit for ice twice daily, for three months. Defendant renewed these modalities again on August 18, 2015. He also renewed prescriptions and permits on September 27, 2015, November 19, 2015, and January 18, 2016.

On May 22, 2016, Dr. Tilden saw Plaintiff for complaints of right inguinal pain and radiculopathy to the lower back. Defendant renewed the Ultram prescription, increasing the dose to twice daily. On May 29, 2016, Defendant Tilden decreased the Ultram prescription to once daily, claiming he did so at Plaintiff's request. Plaintiff disputes this, asserting that he did not request a decrease in dosage. On June 19, 2016, Defendant Tilden increased the Ultram dosage in response to Plaintiff's complaints of increased low back pain.

The records document that Dr. Tilden continued this same course of treatment when he saw Plaintiff for related complaints on September 16, 2016, November 3, 2016, March 3, 2017, October 6, 2017 and October 12, 2017. In addition, Plaintiff was seen by Physician's Assistant

Riliwan Ojelade on March 1, 2017 and July 26, 2017, and by Nurse Practitioner Cheryl Hanson on October 16, 2017.

Plaintiff has testified that the inguinal pain became appreciably worse in 2014. He claims that toward the end of the year he was unable to eat or leave his bed for four or five days. He complains that Defendant Tilden has refused to determine the cause of the pain and has refused to assign him to a chronic clinic, with the result that his medications and permits often lapse prior to being renewed.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once a properly supported motion for summary judgment is filed, the burden shifts to the non-moving party to demonstrate with specific evidence that a triable issue of fact remains for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). The party opposing summary judgment "must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Finally, a scintilla of evidence in support of the non-movant's

position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

## DELIBERATE INDIFFERENCE STANDARD

It is well established that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment. *Snipes v DeTella*, 95 F.3d 586, 590 (7th Cir 1996), citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). ). "In order to prevail on a deliberate indifference claim, a plaintiff must show (1) that his condition was 'objectively, sufficiently serious' and (2) that the 'prison officials acted with a sufficiently culpable state of mind." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008)(quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)(same). A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes* at 591, citing *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974); *Cannon v. Thomas*, 419 U.S. 813 (1974).

## ANALYSIS

<u>Wexford Defendants</u>

Plaintiff has testified that, despite years of severe pain he has not been accurately worked-up and diagnosed. Plaintiff claims that though the pain is intermittent, it is debilitating. Plaintiff asserts that during the time he was at Pontiac, Defendant Tilden did not undertake appropriate testing so as to determine the cause of the pain.

Defendant Tilden has responded to Plaintiff's claim with a sworn affidavit in which he attests that Plaintiff's symptoms were not indicative of surgical mesh failure. He states that

Plaintiff 's subjective complaints of pelvic pain were non-specific, and inconsistent with exam findings. Defendant Tilden attests, further, that Plaintiff's complaints of pain were adequately managed with pain medication, citing Plaintiff's deposition testimony that the Ultram and ice regimen helped alleviate the pain. Plaintiff, however, has claimed that the intermittent pain is so severe that, from May 2014 through February 2015, he was semi-bedridden. Plaintiff asserts that Defendants allowed him to suffer "excruciating pain" for nine months without determining the cause of the pain.

Defendant Tilden asserts, as do the other Wexford Defendants and the IDOC Defendants, that Plaintiff has failed to identify a serious medical need. The Court, however, rejects this argument. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (a condition is serious if a failure to treat results in "'further significant injury or unnecessary and wanton infliction of pain.'") (quoted cite omitted). "[D]eliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim . . . 'The length of the delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment.'" *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (internal and quoted cites omitted).

Here, the Court finds that Plaintiff suffered from a serious medical condition so it must be determined whether there remains a material issue of fact as to whether Defendant Tilden was deliberately indifferent to it. It has been recognized that "there is not one 'proper' way to practice medicine in prison…" *Allen v. Ghosh*, No. 13-0146, 2016 WL 128014, at *9 (N.D. Ill. Jan. 12, 2016), *aff'd*, 693 Fed. Appx. 445 (7th Cir. 2017) (internal citations omitted). A prisoner may not, however, be subjected to "a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016), as amended (Aug. 25, 2016) quoting [*Farmer v. Brennan*, 511 U.S. 825, 832](#)

(1994). The failure to address pain readily treatable pain, or adherence to a course of treatment known to be ineffective… may constitute deliberate indifference. *Petties*, 836 F.3d at 730.

In *Petties*, the Seventh Circuit noted "we have [repeatedly] rejected the notion that the provision of some care means the doctor provided medical treatment which meets the basic requirements of the Eighth Amendment." *Id*. at 731. It found, instead, that one must look at "the context surrounding a doctor's treatment decision… When a doctor says he did not realize his treatment decisions (or lack thereof) could cause serious harm to a plaintiff, a jury is entitled to weigh that explanation against certain clues that the doctor *did* know. Those context clues might include … evidence that the patient repeatedly complained of enduring pain with no modifications in care…" *Id*. at 731.

Here, Plaintiff asserts that he complained of debilitating pain for some years. The worst was the burning pain which arose at the hernia repair site and which did not respond to pain medication but only to the application of ice packs. Here, there remains a dispute issue of fact as to whether Defendant Tilden's decision to continue the same course, despite Plaintiff's recurrent pain and failure to improve "demonstrated an absence of professional judgment, that is, no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.,* 163 F.3d 982, 989 (7th Cir. 1998). This claim will proceed.

Plaintiff's claims as to his prostate issues are unduly vague. He asserts that on October 20, 2017, Defendant Tilden diagnosed him with punctuate calcifications of the seminal vesicles in the prostate gland, acute onset prostatitis and benign prostatic hypertrophy. [ECF 279-3 p. 28]. A review of the subject medical record, however, does not reveal that Defendant made any such diagnoses, other than the benign prostatic hypertrophy. Furthermore, Plaintiff alleges that

these conditions *could* result in pain and further injury if not treated. Plaintiff does not particularly claim he has any symptoms other than the previously noted "unusual feelings."

Defendant Tilden, for his part, has submitted sworn testimony that his rectal exam of Plaintiff revealed only a minimally enlarged prostate, common for a man of Plaintiff's age. Plaintiff has offered nothing to support that his benign enlarged prostate represented a serious medical need to which Defendants were deliberately indifferent. As a result, Defendants' motion for summary judgment is granted as to this claim.

As to Defendant Pouk, Plaintiff asserts that she was non-responsive when he grieved the lack of appropriate care. Defendant Pouk has filed a sworn affidavit attesting that, as the Director of Nursing, she was not directly involved in patient care. As part of her duties, however, she reviewed inmate grievances concerning medical treatment. In responding to such grievances, she would review the inmate's medical records or speak to the treating physician to determine whether a plan of care was in place. If there were such a plan, she would investigate to determine whether it was being followed. If there were no plan in place, she would recommend that the inmate sign-up for sick call.

Section 1983 liability is predicated on fault, so to be liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir.2001) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir.2001)). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Ames v. Randle,* 933 F.Supp.2d 1028, 1037–38 (N.D.Ill.2013) (quoting *Sanville,* 266 F.3d at 740). It has been determined, however, that merely reviewing an inmate's grievances does not

11

render the reviewer personally liable for the conduct alleged. *George v. Smith,* 507 F.3d 605, 609–10 (7th Cir.2007). *See also, Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

Here, Plaintiff has failed to establish that Defendant Pouk personally participated in the alleged constitutional violation. Furthermore, Plaintiff fails to assert that Defendant Pouk had the authority in her administrative position to order diagnostic testing or other modalities, when the treating physician had not done so. *See Johnson v. Doughty,* 433 F.3d 1001, 1014-15 (7th Cir. 2006) (health care administrator at a prison was not liable for treatment decisions where she referred the inmate to his treating doctor and reasonably relied on the doctor's professional opinions). Defendants' motion for summary judgment as to Defendant Pouk is granted.

Plaintiff also named Nurse Zehr, claiming that she tampered with medical orders, did not help him obtain sick call, and reported false information to Dr. Tilden. Plaintiff asserts, specifically, that Defendants Zehr changed an order for "ice pack" to the order "four ice cubes in a Styrofoam cup." Plaintiff claims that when Dr. Tilden corrected the order, Defendant Zehr changed it back. He also alleges that when he was prescribed Naprosyn, Defendant would change it to Motrin and, if she did provide Motrin, did so at a lower than therapeutic dose.

Defendant Zehr has submitted an affidavit addressing Plaintiff's claims that she modified his July 14, 2014 and July 27, 2014 ice permits. Defendant Zehr explains that the July 14, 2014 ice permit was authorized by Physician's Assistant Todd, not a party to this motion. Defendant noted that the order did not specify the amount of ice to be provided. She followed up with PA Todd and, upon that individual's direction, added the entry "1 cup" into the progress note. Defendant denies having any involvement in Dr. Tilden's July 27, 2014 order for an ice permit.

Defendant Zehr also denies Plaintiff's assertion that she began changing his medication orders after having been served with process around July 25, 2016. Defendant explains that she

is a licensed practical nurse and does not have the authority to prescribe treatment or change a prescription. She indicates that, beginning on July 13, 2016, she changed roles and began working as a Pontiac Pharmacy Assistant. As such, she did not have any involvement in the sick call process and was not involved in medication administration. Defendant has provided Plaintiff's medication records from July, August and September 2016 which substantiate that Plaintiff received all of his medications, as prescribed.

Here, Plaintiff has failed to establish that Defendants Zehr demonstrated deliberate indifference as to his ice permits. Defendant has established that she merely requested clarification as to the July 14, 2014 order, recording the clarification in the record. She also claims that she was not involved in the subsequent, July 27, 2014 order, and Plaintiff provides nothing to substantiate otherwise.

Plaintiff also fails to substantiate that Defendant changed his medication orders. Defendant has provided sworn testimony that as a licensed practical nurse and, later, as a Pharmacy Assistant, she did not have the authority to change medication orders. The Court notes, furthermore, that, while Plaintiff has made repeated claims that he was not receiving his medications, this is not borne out in the record. This is so, as on June 22, 2018, the Court considered Plaintiff's seventh motion asserting that his permits and prescriptions had been allowed to lapse. The Court noted that, when Defendants responded to the prior six motions with evidence that Plaintiff had received these modalities without interruption, he either failed to reply or withdrew his motions. The Court, nonetheless, ordered Defendants to respond a seventh time and they, once again, provided competent evidence that Plaintiff's permits and prescriptions had not been interrupted. As a result, Plaintiff has failed to identify material issue of fact in support of his claims against Defendant Zehr and she is dismissed.

13

As to Wexford, Plaintiff testified that Wexford has a widespread practice of unreasonable delay and misadministration of medication. Private corporation such as Wexford have potential *Monell* liability under § 1983 when performing a governmental function. *Iskander v. Village of Forest Park,* 690 F.2d 126, 128 (7th Cir. 1982). Since there is no *respondeat superior* liability under §1983, Wexford has potential liability only if it had an unconstitutional policy, practice or custom which caused the constitutional deprivation. *Salcedo-Vazquez v. Nwaobasi*, No. 13- 606, 2015 WL 7177231, at *7 (S.D. Ill. Nov. 16, 2015) citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015).

Plaintiff asserted that, pursuant to a Wexford policy or practice, medication prescriptions are not renewed until they have run out. In this case, however, the Court has previously determined as unfounded, Plaintiff's claim that his prescriptions and ice permits had been allowed to lapse. As a result, Plaintiff fails to establish that, even if such a policy exists, he was harmed by it. *See City of Canton v. Harris,* 489 U.S. 378, 389 (1989) (the alleged policy must have been "the moving force" causing plaintiff injury). *See Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 865-67 (7th Cir. 2013) (" if a given policy causes no harm to the plaintiff there is no possible relief.")

The Wexford Defendants also assert that Plaintiff's isolated complaints of occasional right inguinal discomfort and tingling on August 3, 2011 and September 22, 2011 are outside the applicable statute of limitations. The statute of limitations to be applied in this case is the Illinois two-year state statute. *Wilson v. Garcia,* 471 U.S. 261, 276, (1985); 735 ILCS 5/13-202. The two-year limit may be tolled, however, where the Plaintiff pleads a "continuing violation." *Jervis v. Mitcheff,* 2007 WL 435543, *2 (7th Cir. Dec. 13, 2007). Here, Plaintiff claims that

Defendants' alleged misconduct was a continuing violation and that the 2011 claims are not barred.

The Seventh Circuit has explained that the question as to how far back a plaintiff's claims may reach, and remain within the statute of limitations, is one of accrual. This determination is made applying federal common law, rather than state law. A §1983 claim for deliberate indifference does not accrue until "[defendants] learned [plaintiff] had a condition warranting medical attention yet unreasonably refused to provide that attention. Until then, the defendants had not violated his rights, and so his claim had not accrued." *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). *See also*, *Jervis,* 2007 WL 435543 at *2.

Here, the Defendants assert that Plaintiff's complaints in 2011 were easily treated with pain medication and Plaintiff made no additional related complaints until May 2014. They assert, therefore, that they did not have notice in 2011 that this was an ongoing issue.

Here, the Court finds that Plaintiff's two complaints in 2011 were appropriately addressed and there is no evidence that Defendants exhibited deliberate indifference in 2011. As a result, Plaintiff's claim did not accrue until 2014, the time at which Defendants may be found to have notice that Plaintiff had a "condition warranting medical attention." As a result, the events of 2011are not a continuing violation, and are not part and parcel of the 2014 claims. The 2011 claims and any other potential claims which occurred more than two years prior to the December 31, 2015 filing date, are dismissed.

<u>IDOC Defendants</u>

Plaintiff claimed that Defendant Arroyo was deliberately indifferent as she "obstructed" his being seen by Defendant Tilden, that she did nothing in response to his grievances regarding treatment and did nothing in response to his complaint that he was being charged a $5.00 co-pay

when seen in the healthcare unit. Plaintiff makes similar claims against Defendant Birkel. They are that Defendant Birkel refused to schedule him for medical visits, allowed medications to lapse and assessed $5.00 medical co-payments. Defendant Arroyo and Birkel have filed a motion for summary judgment asserting in response to the deliberate indifference claims, only that Plaintiff did not have a serious medical need. As previously noted, the Court has rejected that argument.

The Court now reviews the record to determine whether Defendants were deliberately indifferent to Plaintiff's serious medical need. While Plaintiff alleges that Defendant Arroyo obstructed his access to medical care by not scheduling him to be seen by Defendant Tilden, the record clearly demonstrates that Plaintiff received, regular and frequent treatment by Dr. Tilden. As a result, the Court finds no evidence that Defendant Arroyo obstructed Plaintiff in the manner alleged. Here, it is clear that the treatment Plaintiff wanted was an investigation into the source of the pain and the suspected recall of the mesh. Plaintiff offers nothing to support, however, that Defendant Arroyo, a healthcare administrator, had the authority to do this.

Furthermore, Plaintiffs' claims as to the co-payments were not pled in his amended complaint and, therefore, are not addressed here. *See Berry v. Chicago Transit Auth.*, 618 F.3d 688, 693 (7th Cir. 2010) ("a plaintiff may not use her brief opposing summary judgment to introduce claims not stated in her complaint…").

The Court also dismisses the similar claims asserted against Defendant Birkel. It finds Plaintiff's claim that Defendant impeded his access to medical care unsupported in the record. The Court has already dismissed the claim that Defendant Birkel, or any other Defendant, allowed Plaintiff's prescriptions and permits to lapse. The claim as to the medical co-payments, of course, has also been dismissed.

The Court has previously granted the Wexford Defendants' statute of limitations defense, and incorporates that portion of the order as for its order granting the IDOC Defendants' companion statute of limitations defense.  The IDOC Defendants' motion for summary judgment is granted in its entirety.

**IT IS THEREFORE ORDERED:**

1) The motion for summary judgment of the Wexford Defendants [ECF 206] is GRANTED as to Defendants Pouk, Zehr and Wexford.  It is DENIED as to Defendant Tilden.  The motion for summary judgment of IDOC Defendants Arroyo and Birkel [ECF 246], is GRANTED.  Defendants Pouk, Zehr, Wexford, Arroyo and Birkel are DISMISSED as parties.  This case shall proceed against Defendant Tilden.

2) The Court hereby schedules the trial of this matter for Tuesday, August 20, 2019 to take place in the Federal Courthouse in Urbana, Illinois.  The Court will follow up, scheduling a final pretrial conference and setting a date for submitting the agreed, final pretrial order.

ENTERED this 11th day of March, 2019

/s/ Harold A. Baker

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE